# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

LUNEAL BARNETT, as }
Administratrix of the Estate of }
ROBERT LEE SHORTER, JR., }
 }
    Plaintiff, }
 }
v. } Case No.: 2:05-CV-1922-RDP
 }
FRANKLIN LOGISTICS, LLC, }
et al., }
 }
    Defendants. }

### MEMORANDUM OPINION

    This case is before the court on Defendants Franklin Logistics, LLC and Billy C. Rodgers' Motion for Summary Judgment (Doc. # 21) filed May 24, 2006. The motion has been fully briefed and was under submission as of June 19, 2006. (Doc. # 5).

    Plaintiff's wrongful death complaint, which was filed August 5, 2005 in the Circuit Court of Jefferson County but removed on the basis of diversity by Defendants on September 13, 2005, alleges that the wanton driving of Defendant Rodgers caused the death of Plaintiff's Decedent, Robert Lee Shorter, Jr. (Doc. # 1, Complaint). Rodgers was operating a tractor-trailer rig owned by his employer, Franklin Logistics, LLC, in the early morning hours of July 27, 2006 when his truck collided with the Decedent's car, which was parked in the right-hand lane of Interstate 59. (Doc. # 1, Complaint). Plaintiff has alleged wantonness against Rodgers under Alabama's "Wrongful Death Statute," Ala. Code § 6-5-410, and seeks to hold his employer Franklin Logistics, LLC liable under the theory of *respondeat superior*. Defendants have moved for summary judgment on both claims.

As discussed in detail below, the court is persuaded that Defendants have carried their burden on summary judgment of demonstrating that there are no material facts in dispute and that they are entitled to judgment as a matter of law.

**I.      Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

**II.     Relevant Undisputed Facts**[1]

In the early monring hours of July 27, 2004, Billy C. Rodgers was driving a load of furniture from Houston, Texas to Fairfield, Maine in a Franklin Logistics, LLC tractor-trailer rig along with his wife, who had turned the driving of the truck over to her husband around midnight. (Rodgers Dep., at 30-36). At that time, Rodgers was a professional truck driver with a Mississippi Commercial Driver's License and a good driving record. (Rodgers Dep., at 121; Scott Dep., at 155,[2] 157-158, PX 3 at 7, 10, 12, 15, 17, 20, 21, 24, 27, 36). The tractor-trailer truck was fairly new and in good condition. (Rodgers Dep., at 44).

---

[1] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[2] William Scott is the Safety Director for Franklin Logistics. (Scott Dep., at 27-29).

As Rodgers traveled on Interstate 20/59 from Tuscaloosa, Alabama east towards Birmingham at a speed of approximately seventy (70) miles per hour, it began to rain. (Rodgers Dep., at 36-39). He reduced his speed to fifty-five (55) miles per hour when he encountered a construction zone, and then resumed his speed of seventy (70) miles per hour once he cleared the construction. (Rodgers Dep., at 39-43).  After taking the I-459 bypass, Rodgers entered Interstate 59 and continued traveling in the right-hand lane with his low-beam (standard) headlights on, which enabled him to see approximately 250 feet in front of his truck. (Rodgers Dep., at 90-93; 185; William Scott Dep., at 140).  At some point, the rain stopped, leaving only "steam" rising from the roadway. (Rodgers Dep., at 87-88, 129, 133-134, 179-180).

In the meantime, beginning at 12:57 a.m. on July 27, 2004, numerous motorists began calling 911 to report a car parked in the right lane of Interstate 59 near the Argo Exit in St. Clair County. (Rodgers Dep., at 138-150; Doc. # 17, Ex. D (Coroner's Records - 911 Call Number Detail); Doc. # 17, Ex. C (Accident Report at 1)).  That car was later identified to be owned by the Decedent, Robert L. Shorter, Jr. (*Id.*)  In all, five different motorists called 911 during the twelve and a half minute span between 12:57:23 a.m. and 1:10 a.m. (Rodgers Dep., at 138-150, Ex. 19; Doc. # 17, Ex. D (Coroner's Records - 911 Call Number Detail); Doc. # 17, Ex. C (Accident Report at 1)).[3] The first 911 caller stated, "I'm afraid somebody is going to rear-end that car because I almost did"

---

[3] Plaintiff's motion to strike the record of 911 calls as unauthenticated rings hollow considering that Plaintiff's attorney introduced the tape of those calls as an exhibit to Rodgers' deposition (Rodgers Dep., Ex. 19) and also asked the court reporter at the deposition to transcribe the calls for the record. (Rodgers Dep., at 138-150). Moreover, Defendants have submitted additional evidence authenticating the calls. (Doc. # 17, Ex. D).  Plaintiff's hearsay arguments are equally unpersuasive given that the 911 calls, which were recorded in the course of business by the St. Clair County Comission 911, may be properly categorized as either present sense impressions, Federal Rule of Evidence 803(1); excited utterances, Rule 803(2); or official business records, Rule 803(6).

and "He had no flashers on." (Rodgers Dep., at 139-140, Ex. 19). Two 911 callers reported seeing lights on inside the Decedent's vehicle, but no callers reported seeing flashers. (Rodgers Dep., at 138-150, Ex. 19).

At 1:10 a.m., Rodgers's tractor-trailer rig rear-ended Mr. Shorter's car, which was still parked in the right lane of the interstate. (Rodgers Dep., at 138-150; Doc. # 17, Ex. C (Accident Report)). Mr. Shorter's car did not have any warning flashers on at that time (Rodgers Dep., at 99, 102, 138-150), and Rodgers saw no lights on in the car. (Rodgers Dep., at 99, 102, 147). The first time that Rodgers saw Mr. Shorter's car was "two seconds before I hit it." (Rodgers Dep., at 91-92). Rodgers believes he was in the process of moving his foot from the accelerator to the brake when he collided into the car. (Rodgers Dep., at 91-92). Rodgers believes that he was still traveling seventy (70) miles per hour at the time of the collision (the setting of his cruise control) because he did not have time to depress the brakes. (Rodgers Dep., at 91-92).[4] The police later found Mr. Shorter safety-belted in the driver's seat. (Doc. # 17, Ex. C (Accident Report); Doc. # 17, Ex. D (Coroner's Records – Death Scene Investigation Form), at 2). Approximately twelve minutes elapsed from the time the first 911 caller indicated that the Decedent's vehicle was parked on the interstate until the time of the collision. (Doc. # 17, Ex. D (911 Call Number Detail); Doc. # 17, Ex. C (Accident Report), at 1). The Death Scene Investigation Form completed by the Coroner indicates

---

[4] The electronic settings of the truck prevented it from exceeding seventy (70) miles per hour on level ground. (Rodgers Dep., at 173-174; Scott Dep., PX4). Although the truck's Global Positioning Satellite had malfunctioned and therefore cannot provide quantitative evidence of the exact speed of the truck on the night of the collision, (Scott Dep., at 90-94), Rodgers has testified that he was going seventy, the maximum speed allowed by the truck (Rodgers Dep., at 91-92), and there is no evidence to suggest that his speed was anything to the contrary.

the weather at the time of the accident was "Clear." (Doc. # 17, Ex. D (Death Scene Investigation Form), at 1).

### III.     Applicable Substantive Law and Discussion

As outlined below, the court finds that Defendant Rodgers is due judgment as a matter of law as to Plaintiff's claim against him under Alabama's "Wrongful Death Statute," Ala. Code § 6-5-410, and that, therefore, Defendant Franklin Logistics, LLC is due summary judgment on Plaintiff's derivative *respondeat superior* claim against it.  Plaintiff's only allegation against Rodgers is that his "wanton conduct" caused the death of Plaintiff's Decedent. (Doc. # 1, Complaint, at ¶ 12).[5] Specifically, Plaintiff alleges that Rodgers "failed to exercise proper care in the operation of his vehicle . . . , failed to follow Department of Transportation regulations regarding driving in the fog, and [] consciously and deliberately operated his vehicle in weather conditions which prohibited him from safely operating his vehicle . . . despite have knowledge [that such acts] could seriously injure or kill someone." (Doc. # 1, Complaint, at ¶ 12).

Notably, although the Wrongful Death Statute permits claims for the "wrongful act, omission, or negligence of any person" that resulted in death, *see* Ala. Code § 6-5-410, Plaintiff's sole claim in this case is for wantonness. Unlike negligence, which involves mere inadvertence, wantonness requires a higher showing of a conscious or an intentional act. *Hicks v. Dunn*, 819 So.2d 22, 24 (Ala. 2001); *Scott v. Villegas*, 723 So.2d 642, 643 (Ala.1998).  "Wantonness" is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others," Ala.Code 1975, § 6-11-20(b)(3), and has been further defined by the

---

[5] It is axiomatic that Alabama law governs this dispute. *Bonner v. Williams*, 370 F.2d 301, 302 (5th Cir. 1966) (finding, in a case where decedent met her death as the result of a collision in Alabama, Alabama law governs the diversity action commenced in federal court).

Alabama Supreme Court as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result," *Stone v. Southland Nat'l Ins. Corp.*, 589 So.2d 1289, 1292 (Ala.1991) (citing *McDougle v. Shaddrix*, 534 So.2d 228 (Ala.1988)). In this case, Plaintiff must show that Defendant Rodgers acted with "'reckless indifference to the knowledge that such act or omission will likely or probably result in injury.'" *Bozeman v. Central Bank of the South*, 646 So.2d 601, 603 (Ala. 1994) (quoting *Bishop v. Poore*, 475 So.2d 486, 487 (Ala.1985)). That knowledge of likely injury "may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." *Scott v. Villegas*, 723 So.2d at 643.

The Alabama Supreme Court has carved out special wantonness requirements for claims arising from car accidents, requiring evidence of the tortfeasor's speed coupled with other hazardous circumstances to show reckless or conscious disregard of the rights or safety of others. *Hicks v. Dunn*, 819 So.2d 22, 24-25 (Ala. 2001); *Knowles v. Poppell*, 545 So.2d 40, 42 (Ala.1989); *Smith v. Cullen*, 116 So.2d 582, 586 (1959). Importantly, as demonstrated by the following cases, a plaintiff seeking to establish wantonness must not only show that speed contributed to the accident, but that other hazardous conditions, *of which the tortfeasor had knowledge,* played a role: (1) wantonness found where a speeding motorist knew the road conditions were hazardous but nonetheless opted to pass a tractor-trailer truck which put the vehicle on the other side of him in harm's way, *Hornady Truck Line, Inc. v. Meadows*, 847 So.2d 908, 916 (Ala.2002); (2) wantonness established where a speeding motorist failed to pay attention to the road even though he knew that a restaurant into which patrons would likely be turning was on the other side of the hill he was cresting and obscured from his view, *Hicks v. Dunn*, 819 So.2d 22, 24 (Ala.2001); (3) evidence sufficient for wantonness where

6

a motorist driving at or near the maximum posted speed limit knew that, because of predicted frozen precipitation, loose rock had been spread on three bridges on the road on which she was traveling and that her view would be obstructed because of an upcoming wide curve in the road, *Sellers v. Sexton*, 576 So.2d 172, 173-75 (Ala.1991); and (4) a speeding motorist failed to reduce speed for a sharp curve and narrow bridge despite having passed a number of advisory and warning signs and thus acted wantonly, *Hamer v. Nelson*, 516 So.2d 1381, 1384-85 (Ala.1987).

On the other hand, the Alabama Supreme Court has refused to find wantonness in cases where speed alone is the sole evidence of wantonness offered by the plaintiff – even in cases where the defendant was violating traffic regulations and exceeding the speed limit. In the recent case of *Serio v. Merrell, Inc.*, --- So.2d ----, 2006 WL 1195880 (Ala. May 05, 2006), the Court found no evidence of "other circumstances" justifying wantonness where the defendant lost control of his truck as a result of his decision to exceed the posted speed limit by 15-miles-per-hour. *Serio*, 2006 WL 1195880, at *6. The Court noted that the fact that the defendant lost control of the truck when he applied the brakes was not itself a separate "circumstance" to warrant a finding of wantonness, but instead "merely implicated a consequence of the speed." *Serio*, 2006 WL 1195880, at *6. Thus, Alabama law is clear that even a speeding driver cannot be found to have acted "with reckless indifference to the knowledge that such [speeding] will likely or probably result in injury" unless the driver also had knowledge of other hazardous conditions that contributed to the accident.

In this case, Plaintiff focuses her argument primarily on the allegation that Rodgers was "overdriving his headlights," *i.e.,* driving a speed (70 mph) that allegedly would not allow Rodgers to stop within the distance illuminated by his headlights. It is Plaintiff's belief that had Defendant Rodgers been driving "defensively," he should have been able to see the Plaintiff's disabled vehicle

and, therefore, change speed and lanes successfully to avoid the collision.[6]  For the reasons outlined below, this argument misses the mark under Alabama law.

First, however, as a matter of logic, the court questions the practical application of Plaintiff's "overdriving the headlights" argument.  Plaintiff contends that Rodgers wantonly failed to control his speed so that he could stop within his available sight distance.  According to a Stopping Distances Chart, the total computed stopping distance (including perception distance, reaction distance, and braking distance) for a tractor-trailer rig traveling at 70 miles per hour is 747 feet. (Scott Dep., 140, PX1, at 34).  However, the distance illuminated by a rig's low-beam headlights (which were used by Rodgers on the night of the accident) is a mere 250 feet. (Rodgers Dep., at 90-93; 185; William Scott Dep., at 140).  Even if a driver uses his high-beam headlights (which are not typically used with oncoming traffic because of the risk of obscuring another driver's vision), a driver could only see approximately 350 to 500 feet in front of the truck.  (Rodgers Dep., at 90-93; 185; William Scott Dep., at 140).  Under Plaintiff's theory -- that a truck driver must drive at night only at a speed that allows him to stop within the distance illuminated by the truck's headlights --

---

[6] The court notes that in support of this argument, Plaintiff offers the affidavit of Jon Cook, a Safety Consultant with Motor Carrier Safety Consulting, whose opinion Defendants have sought to exclude under *Daubert v. Merrill Dow Pharmaceuticals, Inc*, 509 U.S. 579 (1993).  According to Cook, professional drivers of commercial motor vehicles have a responsibility beyond compliance with traffic laws to operate a commercial motor vehicle with extreme caution and be prepared to avoid accidents that might occur because of the actions of other drivers.  (Affidavit of Jon Cook). Cook opines that Rodgers failed to do everything that reasonably could have been done to avoid the accident and failed to exercise the following accident preventability guidelines: (a) control his speed so that he could stop within the available sight distance; (b) observe traffic and surrounding conditions; (c) yield right-of-way to avoid the accident. (Cook Affidavit).  The court need not reach the *Daubert* issue because, as outlined in this opinion, the evidence proffered by Plaintiff (even including Cook's affidavit) is insufficient to establish wantonness.

*any* tractor-trailer the size of the one driven by Rodgers would be operating wantonly by driving 70 mph at night regardless of the type of headlights used.

Moreover, unlike other cases in which the Alabama Supreme Court has found that wantonness could be reasonably inferred from the speed of the vehicle coupled with knowledge of other hazardous conditions, there is no evidence that Rodgers was speeding in this case. In fact, it is undisputed that Rodgers was driving *within the posted speed limit* of 70 mph. Neither is there any evidence that other hazardous road conditions were present of which Rodgers had knowledge. Contrary to Plaintiff's assertions that Rodgers violated "Department of Transportation regulations regarding driving in the fog" and "operated his vehicle in weather conditions which prohibited him from safely operating his vehicle," the Death Scene Investigation Form completed by the Coroner indicates the weather at the time of the accident was "Clear." (Doc. # 17, Ex. D (Death Scene Investigation Form), at 1). It is undisputed that it was not raining at the time of the accident, nor was the road wet beyond a light "steam" rising from the surface. (Rodgers Dep., at 87-88, 129, 133-134, 179-180). In fact, the only hazardous road condition present on the night of the accident is one about which Rodgers could not have had knowledge -- a car parked in the right lane of the interstate. The court must agree with Defendants that a driver has no duty to anticipate an immobile car parked on a high-speed interstate highway at night. *See, e.g., McBride v. Baggett Transportation Co.*, 35 So.2d 101 (1948) (finding, in a negligence case, that a driver does not have an absolute duty to stop and avoid an accident "when a car is illegally parked ahead of him without proper lights" because,

9

"[i]n the absence of knowledge to the contrary, users of highways may assume that other users will use them in a lawful manner").[7]

Therefore, with the exception of her unsubstantiated allegation that inclement weather contributed to the accident, Plaintiff "has not undertaken . . . to discuss the elements of her wantonness claim or to identify any feature of [Rodger's] conduct, other than speed, that would

---

[7] The parties dispute whether the Decedent's car in fact was illegally parked on the interstate. Alabama Code §§ 32-5A-136(a) and 32-5A-137(a)(1)(g) provide that no driver "shall stop, park, or leave" an automobile upon the roadway, and that "no person shall stop, stand or park a vehicle...upon a highway." However, that prohibition does not apply "to the driver of any vehicle **which is disabled** while on the paved or main-traveled portion of a highway." Alabama Code § 32-5A-136(b) (emphasis added). With the exception of the June 2006 affidavit of Louis Barnett, which speculates that Mr. Shorter's car broke down due to mechanical problems, the record is devoid of any evidence explaining why Mr. Shorter's car was parked on the interstate at that time of night. (*Compare* Plaintiff Dep., at 11,12, 35, 38, 40, 62; Barnett Dep. at 11, 17, 25 *with* Barnett Affidavit). Moreover, Defendants seek to strike Barnett's affidavit because it references mechanical problems with Mr. Shorter's car that Barnett failed to disclose during his deposition. (*Compare* Barnett Dep. at 27-28 *with* Barnett Affidavit).

Although the law is clear that a "party cannot . . . create . . . an issue [of fact] with an affidavit that merely contradicts, without explanation, previously given clear testimony," *Van T. Junkins & Assoc. Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984), the court need not decide whether Barnett's affidavit is due to be stricken because it finds that the reason why Mr. Shorter's car initially came to a stop on the interstate is immaterial to the question of whether Rodgers' wanton conduct caused the death of Mr. Shorter. Even assuming that Mr. Shorter's car stopped initially because of mechanical problems, the 911 call records indicate that Mr. Shorter had at least 12 minutes from the time his car came to rest in the right lane of Interstate 59 to get out of the car and put himself in a position of personal safety. (Doc. # 17, Ex. D (911 Call Number Detail); Doc. # 17, Ex. C (Accident Report), at 1). There is no evidence to indicate why Mr. Shorter failed to do so. Moreover, there is no evidence that Mr. Shorter had activated his warning flashers in compliance with Alabama Code § 32-5A-133(c), which requires a driver who has "stop[ped] or suddenly decrease[d] the speed of a vehicle [to provide an] appropriate signal . . . to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." Although some of the 911 callers reported seeing lights on in the interior of Mr. Shorter's car, no callers reported seeing warning flashers (Rodgers Dep., at 138-150, Ex. 19) and the evidence is undisputed that no warning flashers were on at the time of the accident. (Rodgers Dep., at 99, 102, 138-150). Thus, the court cannot conclude that Rodgers had a duty under Alabama law to anticipate - and thus avoid hitting - a driver who had been sitting for at least 12 minutes in a car in the right lane of a high-speed interstate without activating his warning flashers.

represent a wanton act or omission." *Serio*, 2006 WL 1195880, at *6. Plaintiff's failure to show that Defendant Rodgers acted with "'reckless indifference to the knowledge that such act or omission will likely or probably result in injury'" is fatal to her claim. *Bozeman v. Central Bank of the South*, 646 So.2d 601, 603 (Ala. 1994). Accordingly, Plaintiff cannot establish wantonness on the part of Rodgers, or *respondeat superior* on the part of Franklin Logistics, LLC, and Defendants' motion for summary judgment is due to be granted.[8]

### IV.    Conclusion

Defendants have carried their burden on summary judgment of demonstrating that there are no material facts in dispute and that they are entitled to judgment as a matter of law. A separate order will be entered.

**DONE** and **ORDERED** this ____24th____ day of July, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[8] The court notes that it need not address many of the arguments presented by the parties in their summary judgment submissions – including the sudden emergency doctrine or whether the Decedent was responsible for over half the speed differential between the two vehicles– because they are irrelevant to the ultimate issue of wantonness.